## No. 28423

**Donald Cameron Tribe v. The District Court in and for the County of Larimer and the Honorable John-David Sullivan, a Judge thereof**

(593 P.2d 1369)

Decided April 30, 1979.

J. Gregory Walta, State Public Defender, Craig L. Truman, Chief Deputy, Nicholas R. Massaro, Jr., Deputy, for petitioner.

Stuart A. VanMeveren, District Attorney, Loren B. Schall, Assistant, Francis H. Oldham, Deputy, for respondents.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

The petitioner, Donald Cameron Tribe, is charged in the Larimer County District Court with the offense of first-degree murder. His counsel moved to sequester the jury pursuant to Crim. P. 24(f), which provides that "in capital cases . . . jurors shall remain in the bailiff's custody during all recesses from the time the jury is selected until discharged by the court." The motion was denied by the trial court.

Petitioner also filed a motion to prohibit photography in the courtroom, either live or still, and to prohibit artists' drawings. The motion was based on Canon 3A(10)(b) of the Colorado Code of Judicial Conduct, which prohibits photography or broadcasting unless the accused has affirmatively given consent. The trial court denied this motion as well.

Upon application by petitioner, we issued a rule to the respondent directing him to show cause why the jury should not be sequestered during the trial of this matter in accordance with Crim. P. 24(f) and why he should not be prohibited from permitting cameras in the courtroom during the trial. We now make that rule absolute.

I.

We deal first with the question of whether the jury must be sequestered in this case as the petitioner requests. At the time the petitioner was charged, first-degree murder could be punished by the death penalty under certain circumstances. In *People v. District Court,* 196 Colo. 401, 586 P.2d 31 (1978), however, we held the Colorado death penalty statute as it then existed to be unconstitutional. As a result, the death penalty cannot be imposed in this case. Respondent argues that this circumstance removes the instant case from the category of a "capital" case and therefore Crim. P. 24(f) mandating a sequestration in such cases no longer applies. We do not agree with this contention.

■ We are not without guidance in the resolution of this issue. In *People ex rel. Dunbar v. District Court,* 179 Colo. 304, 500 P.2d 358 (1972), this court adopted the "classification" theory when dealing with the question of what constitutes a capital offense with respect to bail. There we held that murder remained a capital offense despite the unconstitutionality of the death penalty, saying:

"Our Constitution has defined a *class* of crimes which permit the denial of bail. Murder is within that class." *Id.* at 307, 500 P.2d at 359. (Emphasis added.)

Thereafter the Colorado Court of Appeals held that, in a murder case, the accused was entitled to the fifteen peremptory challenges afforded capital cases even though the death penalty could not at that time be constitutionally exacted in this state. *People v. Haines,* 37 Colo. App. 302, 549 P.2d 786 (1976). The opinion cogently argued that by reason of *Dunbar, supra,* Colorado had adopted the "classification" theory. We denied certiorari in that case.

We are not unmindful of *People v. Hines,* 194 Colo. 284, 572 P.2d 467 (1977), in which the respondent contends we, in éffect, overruled *People v. Haines, supra.* Not so.

In *Hines* the pertinent *statute* itself provided that no death penalty could be administered under the facts alleged in the charge. We adhere to *Dunbar, supra,* and the "classification" theory adopted there, joining California;[1] Utah;[2] Louisiana;[3] Oklahoma;[4] Washington;[5] Nevada;[6] Mississippi;[7] West Virginia;[8] and Alabama.[9]

■ We hold therefore that Crim. P. 24(f) continues to require sequestration of jurors in a first-degree murder case unless the requirement is waived by the accused.

## II.

■ The second issue posed here is whether a trial court may permit cameras in the courtroom despite the prohibition laid down by Canon₁ 3A(10)(b) of the Colorado Code of Judicial Conduct. That Canon

[1] *People v. Anderson,* 6 Cal.3d 628, 493 P.2d 880, 100 Cal. Rptr. 152, footnote 45, *cert. denied,* 406 U.S. 958, 92 S.Ct. 2060, 32 L.Ed.2d 344 (1972).
[2] *State v. James,* 30 Utah 2d 32, 512 P.2d 1031 (1973); *see also Roll v. Larson,* 30 Utah 2d 271, 516 P.2d 1392 (1973).
[3] *State v. Hunter,* _____ La. _____, 306 So.2d 710 (1975); *State v. Flood,* 263 La. 700, 269 So.2d 212 (1972); *State v. Holmes,* 263 La. 685, 269 So.2d 207 (1972).
[4] *Martley v. State,* 519 P.2d 544 (Okla.Crim.App. 1974); *In re Kennedy,* 512 P.2d 201 (Okla.Crim.App. 1973).
[5] *State v. Haga,* 81 Wash.2d 704, 504 P.2d 787 (1972).
[6] *Jones v. Sheriff, Washoe County,* 89 Nev. 175, 509 P.2d 824 (1973).
[7] *Wilburn v. State,* 356 So.2d 1173 (Miss. 1978); *Hudson v. McAdory,* 268 So.2d 916 (Miss. 1972).
[8] *Lycans v. Bordenkircher,* _____ W.Va. _____, 222 S.E.2d 14 (1975).
[9] *Ex parte Bynum,* 294 Ala. 78, 312 So.2d 52 (1975).

prohibits photography and broadcasting in the courtroom without the affirmative consent of the accused. Admittedly the accused here not only did not consent, he affirmatively requested that photography not be permitted during the trial. Thus, the trial judge's order was in direct conflict with the requirement in the Code that all judges adhere to it.

The respondent contends, however, that Canon 3A(10)(b) is in itself unconstitutional as violative of the Sixth Amendment to the United States Constitution and Article II, Section 16 of the Colorado Constitution, both of which guarantee the right to a public trial. The short answer to this contention was stated by the United States Supreme Court in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978):

"Nor does the Sixth Amendment require that the trial — or any part of it — be broadcast live or on tape to the public. The requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed. [*Estes v. Texas,* 381 U.S. 532, 588-589, 85 S.Ct. 1628, 1662-1663 (Harlan, J., concurring), 14 L.Ed.2d 543 (1965).] That opportunity abundantly existed here." 98 S.Ct. at 1318.

We do not by this opinion condemn the use of cameras in the courtroom to depict the actual operation of judicial proceedings. Indeed the philosophy of this court has been just to the opposite for the past 23 years. Our experience with the Colorado version of Canon 3A(10)(b) and Canon 35, its predecessor, which long stood alone among the states after *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), has been an exemplary one. We have now been joined in our version of the Canon by some 22 states. Not one case in this state has been reversed as a result of the operation of cameras in the courtroom under the guidelines laid down by the Code and the trial judges operating under it.

We understand the concerns of the trial judge here when he took into consideration the tumult arising from television which he could not prohibit while the accused was in public areas. The restrictions he proposed in this case were designed to cause the least possible interference with the trial. But the issue here is clear. The Canon as it now stands prohibits photography without the express consent of the accused. It does not violate the constitutional guarantees of a "public" trial. We must, therefore, set aside that portion of the repondent's order which permits photography in the courtroom during this trial.

There is some claim here that the trial court must also prohibit artists from making drawings in the courtroom during trial. Canon 3A(10)(b) does not prohibit this activity and we will not disturb the trial court's direction in refusing to ban this activity.

The rule is made absolute in all parts except with respect to artists' drawings of the courtroom scenes and participants.