## CIRCUIT COURT OF FREDERICK COUNTY

Commonwealth of Virginia

    v.

Brent Henry Parker

### December 23, 1986

### Case No. (Criminal) 5007

## By JUDGE HENRY H. WHITING

The Court reserved two of the defendant's written grounds of the motion to set aside the verdict for further consideration after receipt of a transcript of a portion of the trial testimony.

Those two grounds are ruled upon in this letter.

First, the Court should not have permitted John Bryant, a jailor, to testify because he was in the courtroom for a short time during the taking of testimony despite the exclusion of the witnesses by Court order on motion by defendant made pursuant to the provisions of Virginia Code § 19.2-265.1. That statute requires the exclusion of every witness and is mandatory if either party shall request it. *Johnson* v. *Commonwealth*, 217 Va. 682, 683 (1977). However, where a witness has violated the Court's order the Court may in its sound discretion permit the witness's testimony to be heard. *Brickhouse* v. *Commonwealth*, 208 Va. 533, 537-538 (1968). *Brickhouse* was decided under the former statute, § 8-211.1, in which the exclusion of witnesses was discretionary with the Court, *York* v. *Commonwealth*, 212 Va. 776 (1972); *Evans* v. *Commonwealth*, 215 Va. 609 (1975); *Hensley* v. *City of Norfolk*, 216 Va. 369 (1975), but *Brickhouse* did not premise its holding upon the rule of discretion, which

was deleted in the 1975 amendment, *Johnson, supra,* but upon the proposition that:

> There is nothing in the language of the statute to support the argument of counsel for the defendant that the presence of the witness in the courtroom, in disobedience of the order of exclusion, disqualified such witness from testifying. On the contrary, it is generally held that it is within the sound discretion of the trial court to permit the testimony of a witness who has violated an order directing his exclusion from the courtroom. (Citing a number of cases and texts.) *Brickhouse* v. *Commonwealth,* 208 Va. 533, 537.

In this case the evidence showed that the witness heard no testimony which bore upon his testimony (Tr. pages 34, 41) and was not known to be a witness when he was in the courtroom. His information came out as the result of a chance remark he made to another law enforcement officer during a recess, and the Court was convinced that his presence was entirely innocent and in no way influenced his testimony. The Court does not believe that the defendant suffered improper prejudice[1] by permitting him to testify that when he had had some difficulty with the defendant while the defendant was in jail some weeks earlier the defendant "looked at my head and he said my head would pop just like the other guy's head did. And, I replied back, 'Well, I wouldn't be drunk.' And, he says, 'Well, I was drunk that night, too'." (Tr. page 32.) The testimony was in contradiction of the defendant's statement he had never ever said that to anyone in response to the testimony of earlier Commonwealth's witnesses that the defendant had told him that he had popped the decedent's head, or words to that effect in describing his encounter with the decedent the night of his death.

Additionally, his testimony is now objected to on the ground that it violated the discovery order. That was not assigned as a ground at trial (Tr. page 31). The

---

[1] The Court cannot (and should not) take any note of what some jurors allegedly told defense counsel after the trial.

relevant motion for discovery was Paragraph 1 of the discovery motion filed on December 2, 1985. That paragraph mirrored Rule 3A:11(b)(i) in the requesting "relevant, written or recorded statements made by the accused, or copies thereof, or the substance of any oral statements or confessions made by the accused to any law enforcement officer, *the existence of which is known by the Attorney for the Commonwealth* to be in the possession, custody or control of the Commonwealth." (Italics added.) While this oral statement was made a few weeks before trial to a jailor, the existence of that statement was not known by the Attorney for the Commonwealth until the day the witness testified. The evidence convinces the Court that there was no deliberate suppression of the statement and it was only reported by the jailor to the Commonwealth's Attorney just before he was called upon to testify. Under those circumstances the Court does not believe the statement was required to be produced in advance of trial under the provisions of the Rule cited. Further, it cannot be the ground for setting aside the verdict because it was not brought to the Court's attention at the time, § 8.01-384, Virginia Code.

For the foregoing reasons, the Court denies the motion to set aside the verdict based on the admission of John Bryant's testimony.

The second ground on which the Court reserved decision turned on the testimony of Dr. Field, the pathologist. It is claimed that the Court erred in permitting her "to testify as to criminal agency and permitting her to classify her testimony in part as guesswork on redirect examination" (Ground 5).

Dr. Field did not testify that the defendant's boots were the murder weapons (criminal agency); she testified that she could not point out a specific object as the death dealing instrument (Tr. page 14) but she believed the injury to the head was caused by "a blunt object, such as, a stick, or anything with a relatively straight edge [and that] boots similar [to defendant's] could have caused the injuries to the scalp" (Tr. page 15). Also, she said those boots could have caused "any of the injuries other than the lacerations on the leg (Tr. page 16). Dr. Field was held qualified as an expert pathologist and as such permitted to testify as to the "cause. . . of wounds." Section 216, *Friend on Evidence* (1977 ed.) page

381. Moreover, she did not say the boots were the murder weapon but only that, in her opinion, they could have been the murder weapon. None of her testimony could be classified as fixing "the criminal agency." This is underscored in dealing with the second part of the motion dealing with Dr. Field's testimony.

That part asserts that the Court erred in permitting her "to classify her testimony in part as guesswork on redirect examination." The doctor was candid in saying, "[i]t is more likely that a straighter. . . something with a straighter edge [than the boots] would have inflicted the wounds on the scalp" (Tr. page 22). The question was asked as to whether it was a guess but the witness never said she was guessing but repeated her prior statement, "[t]he fact that the lesions on the head are very straight laceration would make it more likely to be a very straight object, although I cannot say that the boots did not cause the injuries" (Tr. page 25). If the question was improper, the answer clearly made it moot; the witness in effect denied it was guesswork.

The Court perceives no prejudicial error in the above grounds to set aside the verdict.